IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

EARL PESTERFIELD, JR., :
:
        Plaintiff, :
:
v. : Civil Action No. 3:00-CV-104
:
SUNBEAM CORPORATION, SUNBEAM :
PRODUCTS, INC., and WAL-MART :
STORES EAST, INC., :
:
        Defendants. :

## AFFIDAVIT OF GEORGE E. McLAUGHLIN

STATE OF COLORADO      )
                                   ) ss
CITY AND COUNTY OF DENVER  )

The Affiant, being first duly sworn, states and affirms as follows:

1.    My name is George E. McLaughlin and I am the plaintiffs' counsel in this case.

2.    I have been pursuing electric bedding fire claims against Sunbeam Products, Inc., or its parent, Sunbeam Corporation, since 1996.

3.    I have been involved in over 40 such cases. These include the cases in which the depositions or trial testimony were taken that are the subject of this dispute. I am also familiar with an earlier case involving similar issues entitled:

        *Edith Cooper and Charles Whitmore v. Sunbeam Corporation et al.*
        U.S. Dist. Ct., E.D. Okla., No. CIV-95-62-S (tried in November 1995).



4. The Exhibits referred to in the plaintiff's Memorandum are contained on the CD Rom in the envelope attached to the plaintiff's Memorandum and are true and accurate copies of that which they purport to be and as are referenced in the Memorandum.

5. All of these cases involve fire incidents allegedly caused by electrically heated bedding products designed, manufactured, assembled and distributed by Sunbeam Products, Inc., or its affiliates or predecessors including Sunbeam Corporation, Sunbeam-Oster Co., Inc., and Northern Electric Co. (all of which are referred to generally as "Sunbeam"). All of these cases involved electrically heated bedding products, including various sizes of blankets and throws, which all contained Sunbeam patented PTC technology heating elements, a Sunbeam patented triode-based safety circuit, known within Sunbeam as Circuit 100; and similar electrical components manufactured from about 1983 to 2000. As such, they all had similar defects and failure modes which created a potential risk of electrical fire. All of these cases involved alleged defects in the manufacturing and assembly of these products which caused faults such as short circuits or open circuits, as well as manufacturing and design defects in the safety circuit intended to shut off power in the event of such open or short circuits. It is alleged in these cases that Sunbeam was aware of these defects and the inadequacy of its safety circuit since the PTC technology was introduced in the early 1980's. It is similarly alleged that in 1997, the Consumer Product Safety Commission (CPSC) requested that Sunbeam stop sale and engage in a recall of this design of electrically heated bedding products, Sunbeam reneged on a commitment to do so, and Sunbeam did not introduce an earlier feasible alternative safety circuit until the year 2000, despite known inadequate quality control, critical reports by a former Sunbeam design engineer, Dr. William Rowe, Jr., numerous claims and lawsuits, adverse jury verdicts, and negative medical exposure. It is also now known that when Underwriter's Laboratories, Inc. (UL) retested this design of electrically heated bedding products in

1999, it found that the safety circuit did not pass the tests under which the product was originally listed and were still then in effect.

6. All of the above cases are related by similar and common subject matters, similar and common products, similar and common issues, common or related defendants, and, with the exception of the early *Cooper-Whitmore* case, common national defense counsel, Moffett and Dillon, P.C. from Birmingham, Michigan, representing Sunbeam.

7. The *Bryte* and *Dunnihoo* cases were released from a bankruptcy stay and therefore had been actively litigated while other pending cases or claims were stayed until Sunbeam emerged from bankruptcy protection in December 2002. Substantial amounts of time, money, and effort have been expended on discovery disputes, videotaped depositions, expert witnesses, etc., in the *Bryte* and *Dunnihoo* cases.

8. Plaintiffs seek to use deposition and trial transcripts from all of these related cases. The face sheets of the testimony are included. Below are short biographies of these persons deposed. Sunbeam's counsel was present and had the opportunity to examine each of these witnesses. These individuals are all past or present officers, managers, employees, or consultants of Sunbeam. They are all aligned with Sunbeam in such a way that they are often represented by Sunbeam's designated counsel, are unwilling or unable to cooperate with plaintiffs' counsel, often require subpoenas to provide depositions even in their home states, and reside in other jurisdictions and are presently beyond the subpoena power of this Court, or are deceased. As such, they are in all respects reasonably unavailable to appear for live testimony in these cases unless produced and made available by Sunbeam.

   (a) <u>Richard Prins</u> - Key engineer since 1980 in the development of Sunbeam's PTC

electrically heated bedding products; "Product Safety Engineer" since 1995; works with Risk Management on claims, sometimes appears as Sunbeam's expert witness; and is often tendered as Sunbeam's FED. R. CIV. P. 30(b)(6) corporate representative, as in the *Bryte* case. He resides and works in Mississippi.

(b) Charles Murin - Sunbeam manufacturing engineer since 1978; present position since 2001 has been Manager of Manufacturing Engineering at the Waynesboro, Mississippi blanket assembly plant. He resides and works in Mississippi.

(c) Jorge Garcia - Sunbeam engineer since 1988; primarily involved in manufacturing and quality control; current title is Director of Quality and Reliability; formerly working in Hattiesburg, Mississippi; he has transferred to Sunbeam's corporate headquarters in Florida.

(d) Joe Thrash - Retired Sunbeam electrical engineer; worked for Sunbeam from 1958 to 1999; worked on PTC technology in the 1980's as well as a sensing safety circuit in the mid-1990's. He currently resides in Mississippi.

(e) David C. Fannin - From January 1994 to August 1998, served as General Counsel or Chief Legal Officer, Executive Vice President, and Secretary of Sunbeam; oversaw Risk Management; interfaced with the CPSC concerning the safety and recall of Sunbeam's electric bedding. He currently resides and works in Florida.

(f) William Rowe, Jr., Ph.D. - A former Sunbeam design engineer working on the PTC technology blankets in the 1980's; after leaving the company began testifying as an expert witness against Sunbeam concerning the safety of the blankets; was sued by Sunbeam and the lawsuit was resolved by a consultation agreement paying him

substantial sums to serve as a safety consultant and precluding him from voluntarily appearing as an expert witness against Sunbeam. Dr. Rowe died in May 2003.

(g) Michael A. Brown - Washington, D.C. attorney specializing in CPSC compliance issues; assisted Sunbeam with CPSC in the electric bedding investigation and recall effort in 1997 or 1998; has been listed as an expert witness in some cases; lives and works in the Washington, D.C. area.

(h) Robert C. Ruski - From August 1994 to September 1998, was Sunbeam's Risk Manager supervising its product liability claims. Mr. Ruski died in 2003.

(I) Norm Massion - Former Sunbeam Risk Manager beginning in November 1998 through at least mid-2000. He is believed to now reside in Florida.

(j) Mark Sullivan - Sunbeam PTC wire and polymer engineer since 1986; appeared as Sunbeam's corporate representative in the *Comstock* trial. He resides and works at Sunbeam in Mississippi.

9. We are also asking to use the depositions of two Rule 30(b)(6) representatives from Underwriters Laboratories, Inc. (UL) who were deposed in late 2003 on a number of related cases involving common issues. UL requires subpoenas and will not voluntarily produce witnesses without subpoenas. Attorney Thomas Vitu of Moffett and Dillon participated in these depositions and cross-examined the witnesses on behalf of Sunbeam.

10. Finally, we are asking to use the depositions of the following other victims of fires caused by Sunbeam electrically heated bedding products:

(a) Frank DeMoss, July 12, 2000. Taken in *Fisher v. Sunbeam*. Resident of Memphis, Tennessee.

(b) Kassandra Fogle, January 26, 2999. Taken in *Drewery vs. Sunbeam*. Resident of North Braddock, Pennsylvania.

(c) Sherri Hollerbeck, July 11, 2000. Taken in *Fisher v. Sunbeam*. Resident of Birch Run, Michigan.

(d) Jennifer Remer, July 10, 2000. Taken in *Fisher v. Sunbeam*. Resident of Glen Ellyn, Illinois.

Sunbeam's counsel attended and cross-examined each of these witnesses.

11. It would save my clients in this case substantial sums of money, would avoid substantial attorney's fees, time and effort for all parties, and would save judicial resources if the above discovery and trial materials did not have to be needlessly repeated in this case and could simply be made available in this case, with whatever such protective orders as the Court deems proper.

Further Affiant saith naught.

*George E. McLaughlin*
George E. McLaughlin

Taken, subscribed and sworn to before me this 2nd day of November 2004 by George E. McLaughlin.

Witness my hand and official seal.

*Ellen V. Larson*
Ellen V. Larson, Notary Public

My Commission Expires:
October 10, 2005